Good morning, Your Honors. John Vodonik from Nevada City, representing Plaintiff and Appellant Anthony Conin, Crown Tree Services. Unless the Court would like a brief statement of facts, I'll proceed directly to argument. I think we're pretty familiar with the factual background. Well, Your Honor, in this case, I try to find a theme for every case that I'm involved with, to the extent that I'm involved with litigation these days, and this theme is what I found is in a perfect world, because in a perfect world, we'd all be dealing with perfect information, we'd all make appropriate decisions, and our taste would be Epicurean, and there would be no accidents, and in this case, there was an accident. In this case, Anthony Conin, my client, was employed as a tree cutter to trim trees on Michael Noodleman's property, because Michael Noodleman was concerned about a drought in The world would have been a more perfect place for your client if you had found the Karp case. Actually, Your Honor, the Karp case, I think, supports our position. Yeah. Yes. Supports our position, as does Home Indemnity. Didn't find it. No, didn't find it. And the district court didn't find it. District court didn't find it either. The insurance company didn't find it. None of us found it. Mayor Kupla, Mayor Kupla, Mayor Maxima Kupla, nor did we find Home Indemnity versus Leo L. Davis, which again supports our position, because it's the, as the Karp case points out, and as the Davis case points out, the critical element in the functionality of the applicability of that particular exclusion from liability, which deals with bailments only, I might add. We don't have a contract of bailment here, nor do we have a contract dealing with personal property, which is the subject of bailment, as the court probably knows, and to California. Can we get down to what the issue is? The issue is not necessarily coverage. The issue is a duty to defend. Yes, Your Honor. Which is. And that is a broader inquiry and a broader duty on the part of the insurance company than determining the merits of whether there's coverage or not. I agree completely, Your Honor. And that is, that has been our position all along, is that it's the duty to defend, which was breached by the insurance company. We have had no judgment of liability in the underlying case. We have only had a case brought up against my client for the mistaken destruction of trees which were misidentified. That, I believe, sets the issue that is before this Court. I don't think that this particular exclusion is applicable at all. The operant instant moment that caused liability at all was the selection of the trees in this case. The selection of the trees did not occur through my client. It occurred through the mistake of Mr. Noodleman, who employed my client. If there was a mistake. If there was – well, if there was a mistake, but I'm not representing Mr. Noodleman. There's nothing in the record to suggest that your client knew that some of these trees were on trust land. No. Nothing at all. No one has made that assertion in this case. My client essentially is the hands and arms of somebody else who made a mistake and the instrumentality. Unless the Court has any further questions, I'll simply reserve my time. Before you sit down, I just wanted to ask, as I understand it, he was doing business as a sole proprietorship. Actually, halfway through, he sold his business to a corporation, which is Crown Tree Services. They were both served. They were both – Okay, but what's – I guess it's just a basic question of what kind of an insurance policy was it? Was it an individual insurance policy for a comprehensive – It was an individual policy. The corporation was an additional co-insured. Okay. I'll sit down now and reserve the rest of my time. So you're saying that the Crown Tree was a co-insured? Yes, Your Honor. I thought it was just listed as his occupation. Well, it is his occupation. Tree trimming was listed on the policy as his occupation. Unless there's some more questions, I'll sit down and reserve my time. That's fine. Thank you, Your Honor. Good morning. I'm Gail Stargardner. I represent a teen specialty insurance company. Can you speak up a little bit? Yes, Your Honor. Your Honor, can you hear me? Yes. Okay. Thank you. I'd like to turn right to CARPE or CARP v. Great American and explain why that case doesn't apply to the facts of this case. And there's two reasons. One in that case the Court assumed because the insurance company never raised the issue that the loss didn't fall within the scope of the insuring agreement, that it was only dealing with an exclusion. This is a GL policy. It's issued to Mr. Cohn in his capacity as a tree trimmer. It covers property damage caused by an occurrence. An occurrence under California's Supreme Court authority in Delgado is an accident. And in a long line of cases, when an insurer's conduct is deliberate, there is no accident. Explain to the panel the difference between cutting down the wrong trees and sending the wrong cow to slaughter. Well, I don't think they're for the — in the first part, when CARPE touches on that argument, they focus on the insurer's intent. And there's that discussion in there if the insurer willfully intended to kill the wrong cow. The intent was to send the cow to the slaughterhouse. It's not — But if the intent was to trim or cut down the trees, brown cow, white cow, I mean, I don't see the difference here. The difference is, in CARPE, the Court focused on the insurer's intent. And that's the wrong — But the intent's the same. No, it isn't, Your Honor. Under California law, we look at the insurer's conduct. And what's critical in this case is that Mr. Cohn admitted both to attain, and he admitted in his declaration in support of summary judgment, that he intended to go on the property and he intended to cut down the trees. And the owner of the cow intended to send Daisy Bell or whatever her name was to slaughter. Correct, Your Honor. But in CARPE, the Court wasn't asked to determine whether there was an occurrence. The Court assumed there was an occurrence. The issue was never raised. They never touch that issue. They go right to the exclusion. And that's what Mr. Vodonik and Mr. Cohn are asking you to do. What did this policy insure Mr. Cohn for? The policy — it's a CGL policy. It's a general liability policy. It's not an errors and admissions policy. It's not a professional liability. So your position is the only time coverage would apply would be if, in the process of trimming the tree, he dropped it on the neighbor's house? That would be an instance. So, for example, if he has the saw or wires and someone's walking through the forest and they trip over his misplaced saw, it covers premises liability at where his operation is his office. It covers things like libel and slander. It's — it is not an errors and omission policy. And California law is clear that an insured has no reasonable expectation that a commercial liability policy is going to cover errors he makes in the performances of the services he provides. Has CARP ever been overruled? CARP has never been overruled, but nor has it ever been cited for the proposition that when the insured acts deliberately and the conduct — the damages arise out of that deliberate conduct, that it is an accident. Nor has it ever been cited for the proposition that the insured's mistaken belief converts his deliberate conduct into an accident. And that's the Borguignon case. Delgado says that. And the Ninth Circuit held that in the Scheid decision. Who was the lawyer advising Attain in making the decision not to defend? Even under a reservation of right. That was me, Your Honor. And you didn't find CARP? I did not find CARP. I did not. And, again, I don't believe CARP has anything to do with this case. But if you had been presented with CARP at the decision point of deciding whether to extend the defense or not, what would have been your reaction? My reaction would have been that CARP simply does not apply under the facts of this case. Whose duty was it to find CARP? I suppose it was my duty to find it. But, again, the fact — it really doesn't have anything to do with this case. Because it doesn't address whether deliberate conduct is an accident. And it doesn't address any of the exclusions we relied on. And the discussion is irrelevant. I thought the position — your position in this litigation was that an intentional act could never be an accident. Is that correct? That's — the position in this instance is that the insurance deliberate conduct cannot be an accident. And the insured admitted both to attain when it — before it made its coverage decision, and, again, on summary judgment — Try it one more time. — that he — I'm going to try it one more time. Okay. Sure, Your Honor. Maybe I'm not — Is it your client's position that under California insurance law, an intentional act can never be an accident? That's correct. Okay. And CARP doesn't dissuade you in the least. CARP doesn't dissuade me in the — Although it involves sending the wrong cow to slaughter intentionally. It doesn't dissuade me in the least because the Court never addressed whether that conduct was an intentional act. And CARP was decided 51 years before Delgado. But how can that be if the facts of the case in CARP involved the decision to send a cow to slaughter? I mean, by — there's no way to characterize that as anything other than intentional conduct. Well, I — and that's why I think if the CARP Court had addressed that, we might have a different decision. But when you look at — there's like a two — I think it's a one-paragraph discussion in CARP. And what it says is if we look at it, if we view the insured subjective intent this way, we come out that it's an accident. If we view the insured subjective intent another way, it's deliberate conduct. It's intentional. And the problem with CARP is that — Is there not a distinction, though, between conduct that is done knowingly but in ignorance, in this case of the actual ownership of the tree — No. — versus conduct that is done intentionally but in ignorance of the fact that this is the wrong cow that was sent to slaughter? No. Under the current State of California law, because we don't view the insured subjective intent, when he admits his conduct was deliberate, that his conduct occurred as he intended, there's no — It's deliberate in the sense that, had he known that the trees belonged to the trust, he would not have cut them down without making sure that his employer had obtained permission from the adjoining landowner to do so. Isn't that true? But then, Your Honor, how is it different from the result in Bourguignon, where the insured had a mistaken belief that he had the right to build his house over a And he did so. There is no question that there's tension between those two cases. You're absolutely correct about that. One is hard to live with the other. But when your duty is to prove that there cannot, under any circumstances, be coverage, and you're faced with these opposing cases defining what can constitute an accident, it seems to me the safer course is to defend a literal reservation of right, don't you think? I don't believe so, Your Honor, because in this case, the insured admitted that his conduct was not accidental. And even assuming, if you get past the occurrence issue, if you find that the loss falls within coverage, then the professional services exclusion removes all potential for coverage. And that exclusion has also been upheld by the courts. And there's no doubt that this was a service, that it was a skilled service, that he was required to have a license, and that his The landowner told him which trees he wanted to cut, so that, in essence, it wasn't Cone who selected the trees. It was the landowner who said, you know, cut here, here, and here. It's irrelevant, Your Honor. Cone had a he was he had a mistaken belief that he had the right to cut the trees. And in the chain of causation He wasn't mistaken with regard to the trees that the employing landowner asked him to cut. The fact that the that Mr. Noodleman gave him the wrong information is an antecedent act. It occurs before his intentional conduct. It can't be considered in the chain of causation as to whether or not his conduct was Well, why isn't that inherently part of the proximate cause analysis? Because, Your Honor He would never have cut the tree if Noodleman hadn't told him to do it. Delgado, Merced, and I'm blanking out on the other case, all stand for the proposition that the reason an insurer decides to make a deliberate act isn't relevant in the chain of causation because it's too remote. So if it happens before, and again, Your Honor, that's Delgado. And this is not a Paul's graph problem, is it? This is, but it's Delgado. It's not that attenuated. Your Honor, it's the, that's what Delgado and Merced all say. That's the law. Delgado particularly talked about the difference between the negligence with the pig and the definition of an accident and saying they're not synonymous. Correct, Your Honor. Okay. Thank you. You are. Thank you very much. I appreciate your time. Your Honor, I would. I bet your client will look at deed records from now on. I beg your pardon, Your Honor? I bet your client looks at deed records from now on. Actually, there's a little app for his iPhone that hunters use to tell when they're on somebody else's property, and he has that now. Got it later. I love it. Okay. Yeah, he got it later. He has a good lawyer. One thing. Yes, you can have what is commonly called an intentional tort, i.e., trespass to land committed negligently under California law. Standing timber is by definition a fixture. It is part of the real estate. You can negligently but intentionally cut the tree. I have nothing further to add. I submit thank you very much for your time. Thank you very much. The case just argued is submitted, and we will puzzle our way through and get you an answer as soon as we can. Thank you both. Thank you.
judges: Hawkins, Tallman, Jack